**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| LARRY WHITTON, on behalf of himself ) <br> and all others similarly situated, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> DEFFENBAUGH INDUSTRIES, INC., et al., ) <br> ) <br> Defendants. ) <br> ) | Case No. 12-2247-CM |

**MEMORANDUM AND ORDER**

Named plaintiff Larry Whitton, on behalf of himself and all others similarly situated, has filed a motion for class certification (Doc. 48). Plaintiff brings claims against defendants Deffenbaugh Disposal, Inc. and Deffenbaugh Industries, Inc. (referred to collectively as "defendants")[1] for breach of contract, violation of the Kansas Consumer Protection Act ("KCPA"), and unjust enrichment[2] for defendants' practice of charging two types of fees: the "environmental/fuel charge" and the "administrative fee." Plaintiff asks the court to certify two separate classes under Federal Rule of Civil Procedure 23(b)(3): a nationwide class for the breach of contract claim (the "Contract Class") and a statewide class for the KCPA claim (the "KCPA Class"). For the reasons stated below, the court denies plaintiff's motion.

**I.   Background**

---

[1]   According to plaintiff's complaint, defendant Deffenbaugh Disposal, Inc. is a Delaware corporation that does business in Kansas. It has previously done business as Deffenbaugh Disposal Service, or "DDS." Deffenbaugh Disposal, Inc. is the parent company of Deffenbaugh Industries, Inc., and Deffenbaugh Disposal, Inc. is the party to which payment for the fees at issue is remitted. Plaintiff alleges that Deffenbaugh Disposal, Inc. has its principal place of business in Kansas City, Kansas. Plaintiff alleges that Deffenbaugh Industries, Inc. is a Missouri corporation that does business in Kansas with its principal place of business in Kansas City, Kansas.

[2]   Plaintiff does not appear to seek class certification as to the unjust enrichment claim, so the court does not discuss it here.

-1-

Defendant Deffenbaugh Industries, Inc. ("Deffenbaugh") is a solid waste disposal company serving customers mostly in Kansas and Missouri. Deffenbaugh provides services to its customers in exchange for an agreed upon monthly service rate. The vast majority of the class members are customers in Deffenbaugh's commercial line of business. Deffenbaugh has approximately 20,000 commercial customers at any given time.

Plaintiff alleges that Deffenbaugh utilizes form, pre-printed contracts with its commercial customers. The contract has blank spaces to enter by hand the customer's name, address, type of service, and other information. Plaintiff entered into a contract with Deffenbaugh in November 2008 and again in January 2010.[3] Plaintiff alleges that these contracts are identical in all relevant ways and that each member of the Contract Class entered into the same form contract. Plaintiff alleges that the contracts differ only in ways (such as customer name, address, and monthly service rate) that have no bearing on defendants' liability.

Plaintiff alleges that Deffenbaugh (referred to as "DDS" in the provision below) charges an "environmental/fuel charge" and "administrative fee" purportedly pursuant to a form provision in the contract titled "Service of Equipment Changes / Rate Adjustments / Fiber Purchases." (Doc. 51-2 at 3.) This provision provides:

> Customer agrees that DDS may from time to time increase the price or rates to adjust for (1) increases in DDS's fuel, disposal, or transportation costs, (2) increases in the Consumer Price Index, (3) increases in costs due to changes in local, state or federal laws applicable to DDS's operations or the Services rendered and (4) increases in taxes, fees or other governmental charges assessed against or passed through to DDS (other than income or real property taxes). DDS may only increase prices or rates for reasons other than those set forth above with the consent of the Customer, which consent may be evidenced in writing or by the practices or actions of the parties.

(Doc. 59-4 at 74.) Plaintiff's proposed class definition (as described later) contains only the first sentence in the provision above. Plaintiff also alleges that the contract contains three other

---

[3]   Plaintiff also had a 2004 agreement with defendants, but he makes no claim under this agreement.

-2-

identical provisions: a Kansas choice of law provision, an integration clause, and a five-year term provision.

Deffenbaugh created the "environmental/fuel charge" in 2003, but it called this fee a "fuel surcharge" until February 2011.  Plaintiff alleges that the methodology for calculating this fee is based on a table that ties the amount of the fee to the average retail price of diesel fuel as tracked by the Energy Information Administration ("EIA").  According to plaintiff, defendants increased the percentage paid by its customers for a given EIA price in order to increase its profits.  All customers are charged the same amount for the fuel fee.  Deffenbaugh created the "administrative fee" in 2003, and all customers are charged the same amount.

Plaintiff argues that defendants have breached the contracts in two ways.  First, plaintiff contends that the provision as stated in the proposed class definition (the first sentence in the provision above) does not contemplate the "administrative fee" or the environmental portion of the "environmental/fuel" fee, and so defendants breached the contracts by charging them. (Doc. 51 at 7, 8 n.6.)  Second, plaintiff acknowledges that the provision upon which he relies explicitly allows for increased rates to adjust for increases in defendants' fuel costs.  But plaintiff alleges that defendants breached the contract as to the "fuel fee" because it does not "adjust for," nor even relate to, defendants' increased fuel costs.  (*Id*. at 8.)  Plaintiff alleges that the "environmental" portion of the fee and the "administrative fee" also are not related to increased costs.

Plaintiff alleges that defendants violated the KCPA by willfully misrepresenting the "environmental/fuel charge" and the "administrative fee" and by willfully failing to disclose material facts regarding these fees.  Plaintiff argues that by using these terms, defendants "intentionally convey a particular meaning about each fee," namely, that the fee is related to

-3-

increased environmental, fuel, or administrative costs.  But plaintiff alleges that these fees are not related to increased costs.  Further, plaintiff alleges that defendants' failure to divulge the methodology used to calculate the fees, failure to report their fuel costs, and failure to disclose that the fees are intended to increase profits (and not to "adjust for" specific costs) violates the KCPA.  Plaintiff contends that this allegedly intentional misleading naming of the fees conveys a false meaning to putative class members in violation of the KCPA.

### II.     Legal Standard

It is within the court's broad discretion to certify a class.  *Shook v. El Paso Cnty.*, 386 F.3d 963, 968 (10th Cir. 2004).  "'The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'"  *Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*, 725 F.3d 1213, 1217 (10th Cir. 2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011)).  The court is required to perform a "'rigorous analysis'" before determining that the Rule 23 prerequisites have been met.  *Id*. (quoting *Dukes*, 131 S. Ct. at 2550.)  And this "rigorous analysis" will frequently "entail some overlap with the merits of the plaintiff's underlying claim."  *Dukes*, 131 S. Ct. at 2551.  In performing its analysis under Rule 23, the court "must accept the substantive allegations of the complaint as true, though it need not blindly rely on conclusory allegations of the complaint which parrot Rule 23 and may consider the legal and factual issues presented by [the] plaintiff's complaint[ ]."  *Midland Pizza, LLC v. Sw. Bell Tel. Co.*, 277 F.R.D. 637, 639 (D. Kan. 2011) (quoting *DG ex rel Stricklin v. Devaughn*, 594 F.3d 1188, 1194 (10th Cir. 2010)) (internal quotation marks omitted).

To obtain class certification, the moving party must show that the requirements of Federal Rule of Civil Procedure 23 are met.  These requirements include first showing that:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a)(1)–(4).  Next, the plaintiff must show that the proposed class falls under one of the categories delineated in Rule 23(b).  Plaintiff seeks classification under Rule 23(b)(3), which requires a finding of predominance (that "the questions of law or fact common to class members predominate over any questions affecting only individual members,") and superiority (that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy"). Fed. R. Civ. P. 23(b)(3).

### III. Discussion

#### A. Class Definitions

Plaintiff moves for certification of two classes: the Contract Class and the KCPA Class.  For the Contract Class, plaintiff proposes the following definition:

> All individuals and entities who reside in the United States who (1) paid "environmental/fuel charges," "fuel surcharges," and/or "administrative fees" to Deffenbaugh Industries, Inc. at any time from May 1, 2007 through the date of class notice and (2) entered into a written contract with Deffenbaugh Industries, Inc. that was in effect at any time from May 1, 2007 through the date of class notice which contains the following provision:
>
>> Service or Equipment Changes / Rate Adjustments / Fiber Purchases . . . Customer agrees that DDS may from time to time increase the price or rates to adjust for (1) increases in DDS's fuel, disposal, or transportation costs . . . .

(Doc. 51 at 13–14.)

For the KCPA Class, plaintiff proposes the following definition:

All individuals, sole proprietors, and family partnerships who (1) paid "environmental/fuel charges," "fuel surcharges," and/or "administrative fees" to Deffenbaugh Industries, Inc. at any time from May 1, 2009 through the date of class notice, and (2) who reside in Kansas and/or who entered into a written contract with Deffenbaugh Industries, Inc. which contains the following provision:

> The rights and obligations of the parties hereunder shall be construed, enforced and governed by Kansas law, without regard to principles of conflict of laws.

(*Id*. at 14.)

Plaintiff notes that excluded from each class are the following: "any individual or entity whose contract with defendants contains written notations which (1) expressly limit or set the amount of any of the disputed fees or (2) include any of the disputed fees in the monthly service rate." (*Id*.)

### B.     Rule 23(a) Requirements[4]

#### 1.  Commonality

Under Rule 23(a)(2), the plaintiff must demonstrate that there is some question of fact or law common to the class.  The common question, though, "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Dukes*, 131 S. Ct. at 2551.  According to plaintiff, the common issues in this case include:

1. Whether defendants engaged in a widespread and systematic practice of charging excessive amounts for the fees;

2. Whether defendants have breached the uniform agreements by charging and collecting the fees;

---

[4]     Defendants do not challenge numerosity under Rule 23(a)(1), and plaintiff has alleged sufficient numerosity.

-6-

3. Whether Kansas state law applies to the form agreements;

4. Whether defendants charge the fees when they do not have any increased costs;

5. Whether the amount of each fee is excessive under the terms of the agreement or applicable law;

6. Whether defendants have ceased charging the fees;

7. Whether the fees are reasonably related to increased costs incurred by defendants;

8. Whether defendants have engaged in deceptive acts or practices by charging and collecting the fees;

9. Whether defendants have made representations that services have characteristics that they do not have;

10. Whether defendants have willfully made representations of exaggeration, falsehood, or ambiguity as to a material fact;

11. Whether defendants have willfully failed to state a material fact, or have willfully concealed, suppressed, or omitted a material fact;

12. Whether defendants have made false or misleading misrepresentations regarding the price in comparison to their own price at past or future times; and

13. Whether defendants have been unjustly enriched by charging and collecting the fees.

Contract Class

Defendants raise several objections in response to plaintiff's proposed common questions relating to the Contract Class. First, defendants argue that the fee provisions were not uniform. Defendants contend that, although pre-printed agreements were often used as a starting point, there was no standard agreement used by all class members. Thus, defendants argue that not all customers were charged the same fees. Further, defendants maintain that there were two different versions of pre-printed agreements, and that its sales representatives had latitude when negotiating the terms of sales agreements with customers. In addition, defendants argue that many of the contracts—including plaintiff's—contained handwritten notations on the agreements reflecting different negotiated terms.

Defendants' arguments ignore the Contract Class definition, which includes only those customers who entered into a contract containing the specific fee provision as set out in the class definition. And the class definition excludes from the class customers with contracts "which (1) expressly limit or set the amount of any of the disputed fees or (2) include any of the disputed fees in the monthly service rate." (Doc. 51 at 14.) The class definition and the exclusion ensure that all class members are operating under contracts containing the identical fee provision.

In addition, defendants point to the fact that plaintiff's contract includes the handwritten notation "plus fuel." However, this notation does not mean plaintiff is excluded from the Contract Class. The proposed class definition's exclusion only bars contracts with written notations that "expressly limit" or "set the amount" of any of the disputed fees, or that "include any of the disputed fees in the monthly service rate." (*Id.*) Plaintiff has put forth evidence that a "plus fuel" notation indicates only that the standard fuel surcharge applies. Because this notation on plaintiff's contract does not expressly limit or set the amount of the fees, or include the fees in the monthly service rate, plaintiff is not excluded from the Contract Class.

Despite these and other objections made by defendants,[5] the court finds that plaintiff has shown there is at least one common question of law and fact relating to the proposed Contract Class as defined. The commonality requirement is satisfied for the Contract Class.

KCPA Class

The court reaches the opposite conclusion for the KCPA Class, however. Plaintiff has not shown that the KCPA applies to his claim and that of the proposed class members, and thus the court determines that commonality is not met.

---

[5] Defendants argue that the voluntary payment defense and issues regarding the choice of law provision in the contracts preclude a finding of commonality. Defendants make the same arguments as to predominance. The court will discuss these arguments in its predominance discussion below.

-8-

Plaintiff alleges a violation of various subsections of K.S.A. § 50-626 for defendants' deceptive acts in connection with the "environmental/fuel charges," "fuel surcharges," and "administrative fees" charged to customers. This putative class action is filed pursuant to K.S.A. § 50-634(d). The KCPA prohibits deceptive acts in connection with "consumer transactions" such as a "sale, lease, assignment or other disposition for value of property or services *within this state* . . . to a consumer; or a solicitation by a supplier with respect to any of these dispositions." K.S.A. §§ 50-626(a), -624(c) (emphasis added).

Plaintiff is a resident of Missouri, and he operates his business in Missouri, where he received services from defendant. In a footnote, plaintiff argues that the KCPA applies and that a "consumer transaction" occurred because (1) defendants solicited customers in Kansas; (2) all challenged conduct, including the alleged misrepresentations, emanated from Kansas; and (3) the contracts contain a Kansas choice of law provision. (Doc. 51 at 12 n.11.) The court disagrees.

First, plaintiff's complaint does not allege that defendants solicited plaintiff or any of the proposed class members in or from Kansas, or at all for that matter.[6] In fact, defendants point to plaintiff's deposition testimony where plaintiff could not identify any solicitation by defendants in Kansas. Instead, plaintiff stated that one of defendant's representatives came to his business in Missouri. Plaintiff does not allege that he visited defendants' website, received advertisements from defendants, or that defendants made any representations to him about the fees at issue. Thus, plaintiff has not alleged any solicitation by defendants that might support application of the KCPA.

Second, plaintiff's claim that the KCPA applies because defendants are based in Kansas, sent out the invoices containing the misrepresented fees from Kansas, and collected and processed payment from these fees in Kansas does not establish a claim under the KCPA. In *Montgomery v. Sprint*

---

[6] Plaintiff's only mention of solicitation is in the footnote as described above. Plaintiff does not provide any additional details in his memorandum as to any solicitation.

*Spectrum, L.P.*, the plaintiff, a Texas resident, sued a Kansas phone company under the KCPA, alleging that the company's collection of a Texas reimbursement fee violated the KCPA. No. 07-2227-JTM, 2007 WL 3274833, at *1 (D. Kan. Nov. 6, 2007). The court dismissed the KCPA claim, focusing on the fact that "a Texas resident is suing for a surcharge seeking to recover for a Texas regulatory fee which was applied to her Texas telephone bill for services that were delivered to her in Texas." *Id*. at *6. The court found that "[t]he KCPA is not intended to serve as a nationwide basis for liability against Kansas companies, based solely upon their presence in this state, when the actual consumer transaction does not occur here." *Id*.

Similarly, plaintiff has failed to show the propriety of the KCPA's application in this case. Plaintiff is a Missouri resident, and he receives services in Missouri from defendants, who are located in Kansas. Plaintiff argues that the "consumer transaction" at issue is not the collection of trash, but rather the charging of the fees at issue. Regardless, the court finds that—although not identical—the facts of this case are similar to those in *Montgomery*. Like the Texas plaintiff's inability to sue a Kansas company under the KCPA for a fee applied to her Texas phone bill and delivered to her in Texas in *Montgomery*, the fact that defendant sends out from Kansas an invoice containing the disputed fees and collects payment of those fees in Kansas for services rendered in Missouri does not support application of the KCPA in this case. Plaintiff's general argument that the challenged conduct "emanated" from the headquarters of a Kansas company is not enough. (Doc. 51 at 12 n.11); s*ee Howard v. Ferrellgas Partners, L.P.*, No. 10-2555-JTM, 2011 WL 3299689, at *7 (D. Kan. Aug. 1, 2011) (finding it "would not be enough to support a KCPA violation . . . that the predicate sales technique be pioneered in Kansas and used in another state").

Plaintiff cites *Watkins v. Roach Cadillac, Inc.*, 637 P.2d 458 (Kan. Ct. App. 1981), in support of his argument that there is a "consumer transaction" here under the KCPA. But *Watkins* is

distinguishable. In *Watkins*, the plaintiff sued a car dealership under the KCPA for misrepresentations made in connection with his car purchase. 637 P.3d at 460. The dealership was a Missouri corporation located in Missouri, but a portion of the business premises was located in Kansas. *Id*. at 460–61. The court found that the KCPA applied, even though the plaintiff purchased the car while sitting in the defendant's business office located in Missouri, because (1) cars were parked on the Kansas side, and the defendant showed plaintiff the car while it was parked in Kansas; (2) the plaintiff test-drove the car in Kansas; and (3) the defendant made a number of statements in solicitation in Kansas. *Id*. at 461. Here, plaintiff has not alleged any solicitation. Plaintiff alleges only that defendants sent invoices containing the fees and collected payment on the fees in Kansas. This is not enough.

Third, plaintiff contends that the Kansas choice of law provision renders application of the KCPA appropriate. But in *Montgomery*, the court found a similar argument to be "without merit"—although the contract between the parties contained a Kansas choice of law provision, the court held that "whatever the agreement between the parties, it cannot create a KCPA violation where the statute itself establishes it has no application." 2007 WL 3274833, at *6. The same is true here.

The court recognizes that its objective in ruling on a motion seeking class certification is to determine whether the class certification requirements are satisfied. But in doing so, the court must often look into the merits of the claim. *Dukes*, 131 S. Ct. at 2251. The court does not find that there are questions common to the KCPA Class if there is no cognizable claim under the KCPA. For these reasons, the court finds that class certification is not appropriate for the KCPA claim. The remainder of the order will discuss whether the Contract Class meets the remaining requirements of Rule 23.

### 2. Typicality

-11-

Under Rule 23(a)(3), plaintiff must demonstrate that his claims or defenses are "typical of the claims or defenses of the class." But the interests and claims of the representative and other class members need not be identical. *Stricklin*, 594 F.3d at 1199. Instead, as long as the interests and claims "are based on the same legal or remedial theory, differing fact situations of the class members do not defeat typicality." *Id*. at 1198–99 (citing *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988)).

Plaintiff argues that typicality is satisfied because he and all of the putative class members entered into contracts containing the same relevant provision, and that this provision will determine liability for plaintiff and all of the class members in the same way. Further, plaintiff argues that he has suffered the same type of injury as the other class members in that they all paid fees that were not allowed under their contracts. Defendants argue that plaintiff's claims are not typical of the class because (1) his only communications with defendants were regarding plaintiff not paying his bill and plaintiff complaining about poor service; (2) he knew he could negotiate out of paying the fuel surcharge and he did in fact do so; and (3) he was aware of the fact that he was being billed the fees at issue, but he paid them anyway without complaint. Defendants also argue that plaintiff is subject to unique defenses, including the voluntary payment defense.

The court finds that plaintiff's claims are typical of the claims of the putative class members: all of the claims are based on the same legal and remedial theories and arise from the same conduct of defendants. Plaintiff and the putative class members all claim that defendants wrongfully charged the "environmental/fuel" and "administrative fees" and that they suffered injury when they paid these fees. The objections raised by defendant do not change this fact. The court finds that plaintiff has satisfied the typicality requirement of Rule 23(a)(3).

### 3. Adequacy of Representation

-12-

Plaintiff must show that he "will fairly and adequately protect the interests of the class" to comply with Rule 23(a)(4). Rule 23(a)(4) requires the class representative to be a member of the class he seeks to represent and the court must determine (1) whether the class representative and class counsel have interests that would conflict with the interests of other class members, and (2) if the class representative and counsel will prosecute the case vigorously on behalf of the class. *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) (citations omitted); *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187–88 (10th Cir. 2002) (quotation omitted). Conflicts defeating class certification "must be fundamental and go to specific issues in controversy." *Eatinger v. BP Am. Prod. Co.*, 271 F.R.D. 253, 260 (D. Kan. 2010) (citing *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003)). A conflict is fundamental if "some members of the class claim harm through a representative plaintiff's conduct that resulted in benefit to other class members." *Id.* (citations omitted). A minor conflict will not operate to defeat class certification. *Id.*

Defendants rely on the same arguments as they did in arguing that typicality is not met. Although it is plaintiff's burden to show each factor is satisfied, defendants have not argued that plaintiff or class counsel have any conflicts with the interests of the other class members. And defendants do not argue that plaintiff or class counsel will not pursue the case with vigor.

As described above, plaintiff is a member of the Contract Class. In his declaration, plaintiff states that he is committed to protecting the interests of the putative class members, and he is unaware of any conflict between his interests and those of the putative class. Plaintiff also points to his participation in this case up to this point in giving deposition testimony and assisting counsel in discovery. The court is not aware of any conflicts that plaintiff's counsel has with the interests of other class members. And based on the background and experience of plaintiff's counsel, as well as

-13-

counsel's participation in this case thus far, the court finds that counsel is well-equipped to represent plaintiff and the putative class in this case.

The court has no reason to believe that plaintiff and class counsel will not adequately represent the putative class. Plaintiff has met his burden and this factor is satisfied.

### C. Rule 23(b)(3)

After determining that the Rule 23(a) factors are met, the court must examine whether the same is true for the requirements of Rule 23(b)(3). Under Rule 23(b)(3), plaintiff must show that (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." In making this determination, the court considers the following pertinent concerns:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

#### 1. Predominance

It is the district court's "'duty to take a close look at whether common questions predominate over individual ones.'" *Roderick Revocable Living Trust*, 725 F.3d at 1219 (quoting *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (quotation omitted)). The predominance factor is "'far more demanding'" than the commonality requirement of Rule 23(a). *Id*. at 1220 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623–24 (1997)). Predominance is satisfied "if there is a common

nucleus of operative facts relevant to the dispute and those common questions represent a significant aspect of the case which can be resolved for all members of the class in a single adjudication." *Eatinger*, 271 F.R.D. at 261 (citations omitted). "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Anchem Prods., Inc.*, 521 U.S. at 623.

Further, "[t]he nature of the evidence that will suffice to resolve a question determines whether the question is common or individual." *In re Urethane Antitrust Litig.*, 251 F.R.D. 629, 633–34 (D. Kan. 2008) (quoting *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005)). If the putative class members must present evidence that will vary from member to member in order to establish a prima facie case, then it is an individual question. *Garcia v. Tyson Foods, Inc.*, 255 F.R.D. 678, 690 (D. Kan. 2009) (citing *Blades*, 400 F.3d at 566; *Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311 (3d Cir. 2008)). But if the same evidence will establish a prima facie case for all class members, then the question is a common one. *See id*.

In support of predominance, plaintiff argues that defendants' liability can be determined "solely on its common course of conduct and the interpretation of uniform contractual provisions." (Doc. 51 at 22.) Plaintiff further argues that defendant charged the same fees, for the same reasons, under the same contractual provisions for each member of the Contract Class. Plaintiff argues that defendants' breach in charging the fees can be established through evidence common to the class as a whole. Plaintiff's main argument is that contractual provision at issue does not allow defendants to charge the environmental portion of the "environmental/fuel charge" or the "administrative fee" at all, and that the provision only allows defendants to charge a fuel fee to "adjust for *increases*" in fuel costs. (Doc. 51 at 23–24.) Plaintiff argues that defendants charged these fees without any regard to increased costs,

-15-

thus breaching the contract. Finally, plaintiff argues that each of the contracts for Contract Class members contains a Kansas choice of law provision, so Kansas law will apply to all class members.

Defendants vehemently deny that there is a form contract here. Defendants argue that some of its sales representatives started using a new pre-printed agreement in 2011 that does not contain a choice of law provision. And defendants argue that still other sales representatives created their own service agreements, "which may or may not include the provision." (Doc. 59 at 25.) Defendants contend that the court must look at each individual contract to see whether it contains the Kansas choice of law provision and that this precludes a predominance finding. In addition, defendants again argue that handwritten notations prohibiting or allowing the fees at issue would preclude a finding of predominance.

The court has reviewed the contracts attached by both parties. It appears that the contracts that include the fee provision quoted in the class definition do include the Kansas choice of law provision. The 2011 contract that defendants point to does not include the identical fee provision set forth in the class definition, so the fact that it also does not include a choice of law provision is irrelevant. And defendants' argument regarding handwritten notations fails for the same reason as described above.

But another argument of defendants does preclude a finding of predominance: Defendants contend that the fee provision cited by plaintiff contains an additional sentence stating that defendants may increase rates for other reasons with consent of the customer. Specifically, the sentence following the portion of the fee provision cited in the class definition states: "DDS may only increase prices or rates for reasons other than those set forth above with the consent of the Customer, which consent may be evidenced in writing or by the practices or actions of the parties." (Doc. 59-4 at 74.) Because the previous sentence (the portion of the provision relied upon by plaintiff) only mentions a fuel charge, defendants argue that the environmental portion of the "environmental/fuel charge" and the

-16-

"administrative fees" are covered by the following sentence that allows increased rates with consent. Defendants argue that this provision requires the court to perform an individualized inquiry for each class member to determine if he or she consented to the increased fee rate for the "environmental/fuel charge" and "administrative fees."

After careful review of the entire provision (and not just the first sentence as included by plaintiffs in the proposed class definition), the court agrees that the issue of whether each class member consented to the "environmental/fuel" and "administrative fees" necessarily requires individual inquiries. And this issue will predominate over other common issues—the court cannot determine whether defendants breached the contracts without determining whether each individual class member consented to the fees. Further, although handwritten notations (such as the one included on plaintiff's contract stating "plus fuel") may only mean that the standard fuel charge applies, the court would need to determine whether the presence of the notation on a class member's contract meant that the class member consented to the charging of the fee. These individual determinations predominate the common issues and prevent certification of the Contract Class. *See Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318, 329 (5th Cir. 2008) (finding no predominance where the plaintiff failed to show consent could "be established via class-wide proof"); *see also Balthazor v. Cent. Credit Servs., Inc.*, No. 10-62435-CIV, 2012 WL 6725872, at *4 (S.D. Fla. Dec. 27, 2012) (finding that individual inquiry regarding "whether each class member consented to receive telephone calls on their cellular telephone" precluded a finding of commonality and predominance).

Defendants also argue that the voluntary payment doctrine precludes a finding of predominance. Similar to the individual inquiries required to determine whether each class member consented to the fees, the voluntary payment defense (assuming without deciding that it applies here)

would likely require "analysis of facts unique to each class member." *Midland Pizza*, 277 F.R.D. at 642. This also weighs against a finding of predominance.

Finally, the court did consider redefining the class definition and certifying the claim only as to the fuel fee because the contract provision does explicitly state that defendants could increase rates to adjust for increases in its fuel costs. (*See* Doc. 51 at 13); s*ee* Fed. R. Civ. P. 23(c)(1)(B) ("An order that certifies a class action must define the class . . . ."). Throughout the briefing, both parties refer to the disputed fees as the "environmental/fuel charge" and the "administrative fee." (*See, e.g.*, Docs. 51 at 1, 4, 6; 59 at 13, 20; 64 at 16.) But the parties (as well as the class definition) also refer to the fuel fee separately from the "environmental/fuel" fee as the "fuel surcharge" or "fuel fee." (*See, e.g.*, Docs. 51 at 8, 9, 13–14; 59 at 4–5; 64 at 1, 10.) Plaintiff explains that the "environmental/fuel charge" was called a "fuel surcharge" by defendants until approximately February 2011, when defendants added an "environmental" portion to the fee. (Doc. 51 at 1 n.1, 4.) And plaintiff argues that the fee provision does not contemplate the "administrative fee" or the environmental portion of the "environmental/fuel" fee, and so defendants breached the contracts by charging them. (Doc. 51 at 7, 8 n.6.) According to plaintiff, defendants breached the contract as to the "fuel fee" because it does not relate to defendants' increased fuel costs. (*Id*. at 8.)

A class definition must be "precise, objective, and presently ascertainable." *Sibley v. Sprint Nextel Corp.*, 254 F.R.D. 662, 670 (D. Kan. 2008). And the class definition is of great import because it "identifies the persons (1) entitled to relief, (2) bound by a final judgment and (3) entitled under Rule 23(c)(2) to the best notice practicable in a Rule 23(b)(3) action." *In re Motor Fuel Temperature Sales Practices Litig.*, 279 F.R.D. 598, 604 (D. Kan. 2012) (citing Manual for Complex Litigation § 21.222 (4th ed. 2005)). It is unclear based on the information before the court exactly what the relationship is between the "environmental" and "fuel" portions of the fee(s). If the court cannot determine whether

the "fuel fee" is separate from the "environmental" fee at a certain point in time, then it would be difficult for potential class members to do so. For these reasons, the court does not believe that redefining the proposed class definition to include only the "fuel fee" or "fuel surcharge" will provide a precise definition capable of identifying the persons entitled to relief, bound by a final judgment, or entitled to adequate notice. For all of these reasons, the court finds that predominance is not met and certification of the Contract Class is not appropriate.

### 2. Superiority

Based on the court's predominance finding above, the court finds that a class action is not a superior method to handle the claims in this case. Plaintiff argues that the potentially low damage award and high costs of litigation may deter individual class members from bringing individual claims and that the court would likely conserve its judicial resources by handling the claims as a class action in a single forum. However, individual inquiries may necessitate "mini trials" that would require more time and resources than if the claim could be resolved by classwide proof. Further, the individual inquiries required in determining whether class members consented to the fees would make the case difficult to manage. For these reasons, the court finds that the superiority requirement is not met.

### IV.   Conclusion

Plaintiff failed to show that the KCPA applies here; thus, the court finds that commonality is not met and class certification is not appropriate as to the KCPA claim. As to the breach of contract claim, plaintiff failed to show that common issues predominate over individual issues and that a class action is the superior method for adjudicating the case. Accordingly, the court finds that the breach of contract claim also is not appropriate for class certification. Plaintiff's Motion for Class Certification (Doc. 48) is denied.

**IT IS THEREFORE ORDERED** that plaintiff's Motion for Class Certification (Doc. 48) is denied.

Dated this 10th day of June, 2014, at Kansas City, Kansas.

s/ Carlos Murguia
**CARLOS MURGUIA**
**United States District Judge**
