IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| LARRY WHITTON, on behalf of himself, and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> DEFFENBAUGH DISPOSAL, INC., *et al.*, <br><br> Defendant. | ) ) ) ) ) ) ) ) Case No. 12-2247-CM ) ) ) ) ) ) ) |

### MEMORANDUM AND ORDER

On May 1, 2012, named-plaintiff Larry Whitton, on behalf of himself and all others similarly situated, brought claims against defendants Deffenbaugh Disposal, Inc. and Deffenbaugh Industries, Inc. (referred to collectively as "Deffenbaugh") for breach of contract, violation of the Kansas Consumer Protection Act ("KCPA"), and unjust enrichment for practice of charging two types of fees: an "environmental/fuel charge" and an "administrative fee." On October 22, 2013, plaintiff asked the court to certify two separate classes under Federal Rule of Civil Procedure 23(b)(3): a nationwide class for the breach of contract claim (the "Contract Class") and a statewide class for the KCPA claim (the "KCPA Class"). (Doc. 51.) On February 7, 2014, Deffenbaugh filed a Motion for Summary Judgment (Doc. 66.) The court denied plaintiff's motion to certify class on June 11, 2014. (Doc. 70.)

Before the court is Deffenbaugh's Motion for Summary Judgment (Doc. 66). Because Deffenbaugh filed its motion before the court ruled on class certification, the motion argues claims that have since been withdrawn by plaintiff—specifically, his claims of unjust enrichment and violation of the KCPA. Those portions of Deffenbaugh's motion are now moot. The motion does argue that

-1-

Deffenbaugh is entitled to summary judgment on the remaining claim—whether Deffenbaugh has breached the contract as to the "fuel [surcharge or fee]" because it does not "adjust for," nor even relate to, Deffenbaugh's increased fuel costs. The court incorporates—and will not repeat here—the comprehensive factual background found in its order denying class certification (Doc. 70).

### I. Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, the court views the record's evidence and reasonable inferences in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "[T]here must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict—whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### II. Genuine Issues of Material Fact—The Contract's Language & The Parties' Terminology

Deffenbaugh argues that no genuine issue of material fact exists because (1) the contract allows Deffenbaugh to increase its rates, (2) plaintiff, through his actions, consented to the fees Deffenbaugh charged, and (3) the voluntary payment doctrine, as recognized by Kansas, bars plaintiff's claim. The court denies Deffenbaugh's Motion for Summary Judgment (Doc. 66) because there are many material facts in dispute.

As noted in the court's order denying plaintiffs' motion to certify class (Doc. 70), the relationship between the "environmental" and "fuel" portions of the fee(s) is one of the central issues, but the parties use of these terms, throughout the briefing, is inconsistent at best.  For instance, both parties refer to the disputed fees as the "environmental/fuel charge" and the "administrative fee."  (*See, e.g.*, Docs. 51 at 1, 4, 6; 59 at 13, 20; 64 at 16.)  But the parties also refer to the fuel fee separately from the "environmental/fuel" fee as the "fuel surcharge" or "fuel fee."  (*See, e.g.*, Docs. 51 at 8, 9, 13–14; 59 at 4–5; 64 at 1, 10.)  Further complicating the record is conflicting testimony as to when the "environmental/fuel" fee became standard billing practice.  Deffenbaugh Chief Financial Officer Ron Anderson states that the "environmental/fuel charge" was called a "fuel surcharge" by Deffenbaugh until approximately February 2011 (Doc. 51 at 1 n.1, 4), while Deffenbaugh points out that plaintiffs' initial motion for class certification included an exhibit showing that named-plaintiff Whitton was invoiced for an "environmental/fuel charge" as far back as July 2008.  (Doc. 88 at 10–11; Doc. 51-14.)  And these terms are heavily entwined with whether the contract allows Deffenbaugh to increase its rates.  This lack of clarity, alone, is a genuine issue of material fact sufficient to preclude summary judgment, especially when the claim is for breach of contract.  But this is also not the only issue with material fact(s) in dispute.

Deffenbaugh's defense of consent involves genuine issues of material fact, too.  The '08 and '10 Contracts each provide that "consent may be evidenced in writing or by the practices or actions of the parties."  The court will assume, without deciding, this provision is enforceable and applicable. Deffenbaugh argues that plaintiff consented to these charges through his actions, such as plaintiff's failure to object to the charges at any time over the course of three years.  The problem with this argument is that, under the terms of the contract, if plaintiff had objected to the charges, plaintiff would immediately lose trash collection service and be subject to the contract's liquidated damages, which

equals plaintiff's "average monthly charge over the most recent twelve month period multiplied by twelve." Deffenbaugh is essentially asking the court to present plaintiff with a classic Hobson's choice:

1. If plaintiff chooses to dispute a charge, plaintiff immediately loses Deffenbaugh's services, must replace those services to continue doing business, and risks Deffenbaugh's collection of its liquidated damages. And if Deffenbaugh does attempt to collect its liquidated damages, plaintiff likely seeks legal counsel.

2. If plaintiff chooses to pay the bill as is, his action constitutes evidence of plaintiff consenting to any fees listed on his invoice, and consequently, plaintiff waives his right to dispute any charge, no matter what impropriety plaintiff alleges.

Additionally, if option #1 is chosen, plaintiff must object at the first appearance of the disputed term. This means that if plaintiff chooses to dispute, say, the invoiced "environmental/fuel charge," he must do so upon receipt of the first invoice that itemizes that particular charge. Doing so, however, subjects plaintiff to approximately $874.08 in liquidated damages. Yet, plaintiff is only disputing approximately $15. A reasonable juror may find for plaintiff because his choice to wait before bringing his suit does not mean he consented to that particular charge by Deffenbaugh. As such, the court views this Hobson's choice as a genuine issue of material fact that precludes summary judgment.

Putting that perspective aside, Deffenbaugh also argues that plaintiff consented to the charges by negotiating the fuel surcharge on his '04 Contract but then executing the '08 and '10 Contracts, which contained a handwritten notation of "Plus Fuel." There are two issues with this argument. First, plaintiff seems to have complained to Deffenbaugh about the charges because during the '08 Contract negotiations Deffenbaugh apparently refunded all of plaintiff's fuel surcharges, which were

-4-

"inadvertently" charged under the '04 Contract. (Doc. 67 at 4, ¶ 10.) Second, Deffenbaugh's handwritten notation on plaintiff's '08 and '10 Contracts explicitly states "Plus Fuel." It does not say "Plus Environmental/Fuel." Although Deffenbaugh adamantly denies that the contracts at issue in this case are form contracts, most, if not all, of Deffenbaugh's other customers' contracts executed before 2011 contain the same "Terms and Conditions" section located on the backside of the contract. This section never mentions an "environmental" charge of any kind.[1] Despite this, Deffenbaugh cites to its invoices to the plaintiff, which explicitly lists an "Environmental/Fuel Charge." But these are also the same invoices that contain the "inadvertent" and later refunded charges. Regardless of when the "environmental" charge became standard billing practice, the lack of any incorporation or reference to an "environmental" charge is a fact that tends to show perhaps plaintiff *did* negotiate the terms of his '08 and '10 Contracts by consenting to the fuel charge, but not the environmental portion. It also may be evidence that plaintiff did not consent to the "environmental" portion of the charge, altogether. These facts reveal material issues of fact as to whether plaintiff Whitton is estopped from disputing the charges, which must be resolved by the trier of fact. *See Prenalta Corp. v. Colorado Interstate Gas Co.*, 944 F.2d 677, 686 (10th Cir. 1991).

Finally, Defendants also argue that the voluntary payment doctrine, as recognized by Kansas, bars plaintiff's claim. Under this doctrine, payments made voluntarily and with full knowledge of all facts cannot be recovered by the payor absent fraud, duress or mistake. *See MacGregor v. Millar*, 203 P.2d 137, 139–40 (Kan. 1949). This court has previously considered the voluntary payment doctrine at the summary judgment stage. *See Midland Pizza, LLC v. Sw. Bell Tel. Co.*, 2010 WL 4622191, at *4

---

[1] Contracts executed after 2011, though not all of them, use a different "Terms and Conditions" page. One of the material differences between the old and new "Terms and Conditions" is that "environmental compliance costs" now appears in the pertinent contract provision at issue in this case.

(D. Kan. Nov. 5, 2010) ("Defendants offer facts that would suggest that plaintiffs made the payments voluntarily. Plaintiffs allege the payments were made without full knowledge of the facts. Whether a payment is voluntary depends on the facts of the particular case. Because resolution of contested facts is essential to the resolution of defendants' affirmative defense of voluntary payment, the court cannot grant the motion to dismiss on this basis.") *Id*. The same is true in this case. Deffenbaugh alleges that many facts suggesting plaintiff made the payments voluntarily. Plaintiff alleges that the payments are made without full knowledge of the facts. Whether plaintiff voluntarily and with full knowledge of all facts is a question for the jury and thus precludes summary judgment.

### III. Conclusion

The court finds that many genuine issues of material fact remain contested. Terms essential to the case remain unclear. The defense of consent, to the extent it is even applicable, requires the resolution of contested material facts, which must be resolved by the trier of fact. Though recognized by Kansas, the voluntary payment doctrine presents questions of material fact that preclude summary judgment, such as whether plaintiff had full knowledge of the facts or made his payments voluntarily. The court therefore denies defendants' Motion for Summary Judgment (Doc. 66.).

**IT IS THEREFORE ORDERED** that defendants' Motion for Summary Judgment (Doc. 66) is denied.

Dated this 27th day of October, 2014, at Kansas City, Kansas.

s/ Carlos Murguia
**CARLOS MURGUIA**
**United States District Judge**