IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

LARRY WHITTON, on behalf of himself, )
and all others similarly situated, )
  )
       Plaintiff, )
  )
v. ) Case No. 12-2247-CM
  )
DEFFENBAUGH DISPOSAL, INC., *et al.*, )
  )
       Defendants. )
  )

## MEMORANDUM AND ORDER

On May 1, 2012, named-plaintiff Larry Whitton, on behalf of himself and all others similarly situated, brought claims against defendants Deffenbaugh Disposal, Inc. and Deffenbaugh Industries, Inc. (referred to collectively as "Deffenbaugh") for breach of contract, violation of the Kansas Consumer Protection Act ("KCPA"), and unjust enrichment for defendants' practice of charging two types of fees: an "environmental/fuel charge" and an "administrative fee."[1] On October 22, 2013, plaintiff asked the court to certify two separate classes under Federal Rule of Civil Procedure 23(b)(3): a nationwide class for the breach of contract claim and a statewide class for the KCPA claim. (Doc. 51.) On February 7, 2014, defendants filed a Motion for Summary Judgment (Doc. 66). On June 11, 2014, the court denied plaintiff's motion—declining to certify either class. (Doc. 70.) Before the court is plaintiff's Motion to Alter, Amend, Vacate or Reconsider the Court's Order Denying Class Certification (Doc. 72). A comprehensive factual background of plaintiff's first attempt to certify his

---

[1] As the court observed in its order denying class certification (Doc. 70), the terminology used by the parties is inconsistent, at best. For purposes of this opinion and general clarity, the terms "fee," "charge," and "surcharge" are largely interchangeable.

-1-

proposed class can be found in the court's order denying certification (Doc. 70). Rather than repeating it here, the court will instead provide a brief synopsis.

**I. Background**

Plaintiff first entered into a contract with Deffenbaugh in November 2004 (Doc. 67-2) ("the '04 Contract"). While plaintiff makes no claims on the '04 Contract, the contract is noteworthy because it contains a handwritten term stating "NO FUEL SURCHARGE," which is underlined several times. Plaintiff subsequently entered into a contract with Deffenbaugh in November 2008 ("the '08 Contract") and again in January 2010 ("the '10 Contract").

Each contract contains the following provision, upon which plaintiff relies, entitled "Service of Equipment Changes / Rate Adjustments / Fiber Purchases," which provides:

> Customer agrees that DDS may from time to time increase the price or rates to adjust for (1) increases in DDS's fuel, disposal, or transportation costs, (2) increases in the Consumer Price Index, (3) increases in costs due to changes in local, state or federal laws applicable to DDS's operations or the Services rendered and (4) increases in taxes, fees or other governmental charges assessed against or passed through to DDS (other than income or real property taxes). DDS may only increase prices or rates for reasons other than those set forth above with the consent of the Customer, which consent may be evidenced in writing or by the practices or actions of the parties.

(Doc. 59-4 at 74.) Deffenbaugh (referred to as "DDS" in the provision above) allegedly charged plaintiff both an "environmental/fuel charge" and "administrative fee" pursuant to that contract provision. While plaintiff acknowledges that the first sentence of that provision allows for increased rates to adjust for increases in Deffenbaugh's fuel costs, plaintiff argues that the provision does not allow the "environmental/fuel" and "administrative" charges. (Doc. 51-2 at 3.) Plaintiff seeks certification of a nationwide class of Deffenbaugh customers because it alleges Deffenbaugh breached its contract for two reasons. First, the fuel fee itself does not "adjust for," or even relate to,

Deffenbaugh's actual fuel costs. Second, Deffenbaugh increased the fuel fee for a given diesel price in order to increase its profits.[2]

The court denied class certification. While the fact that plaintiff's proposed class satisfied all of the factors under Rule 23(a), it could not satisfy Rule 23(b)(3)'s predominance factor. The court could not determine whether Deffenbaugh breached the contracts without determining whether each individual class member consented to the "environmental" and "administrative" fees (or portion of the fee). As a result, the class also failed Rule 23(b)(3)'s superiority prong because determining each class member's consent to a specific contract term would require "mini trials"—making the case difficult to manage. (Doc. 70 at 19.)

In light of the court's order, plaintiff filed the motion before the court. Plaintiff proposes a new class definition that includes only the fuel fee. While the new definition excludes the "environmental/fuel" and "administrative" fees, these fees remain relevant for analytical purposes. The only remaining claim before the court is whether Deffenbaugh has breached the contract as to the "fuel [surcharge or fee]" because it does not "adjust for," or even relate to, Deffenbaugh's increased fuel costs.[3] Plaintiff now seeks certification of a new nationwide class for this claim. (Doc. 94.)

**II. Properness of Class Reconsideration**

In plaintiff's Motion to Alter, Amend, Vacate or Reconsider the Court's Order Denying Class Certification (Doc. 72), plaintiff proposes a new, narrower class definition ("new Contract Class"). Deffenbaugh argues that (1) plaintiff's motion is improper, (2) even if the motion is proper, plaintiff's new Contract Class cannot be identified, and (3) even if the new Contract Class is identifiable, it cannot be certified. Deffenbaugh concedes that "[w]hether to grant or deny a motion for

---

[2] Plaintiff alleges that the methodology for calculating this fee is based on a table that ties the amount of the fee to the average retail price of diesel fuel as tracked by the Energy Information Administration ("EIA"). Importantly, all customers with contracts permitting a fuel fee are charged the same amount. (Doc. 70 at 3.)

[3] Another way to frame this issue is that any increases beyond Deffenbaugh's actual fuel costs are unauthorized increases and therefore unauthorized fees.

reconsideration is committed to the court's discretion." *GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1386 (10th Cir. 1997); *Hancock v. City of Okla. City*, 857 F.2d 1394, 1395 (10th Cir. 1988). But it argues that plaintiff's motion for reconsideration is merely a "second bite at the apple" (Doc. 88 at 3) because plaintiff failed to present his strongest case in the first instance, and plaintiff is attempting to reargue arguments that the court previously rejected.

While Deffenbaugh's argument does find support in case law, that case law almost exclusively concerns reconsidering *dispositive* motions—for example, motions for summary judgment. The present motion before this court is not a dispositive motion, at least not on its face. While it is true that, in the end, a court order decertifying a class may be dispositive because the named-plaintiff may drop his case, that is not always the case, and it is not necessarily the intention of a decertification order. *See Coopers & Lybrand v. Livesay*, 437 U.S. 463, 467 (1978) ("An order refusing to certify, or decertifying, a class does not of its own force terminate the entire litigation because the plaintiff is free to proceed on his individual claim.").

Rule 23 also provides textual support for this proposition. "An order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C). The committee's notes on Rule 23(c)(1)(C) provide that "[a] court that is not satisfied that the requirements of Rule 23 have been met should refuse certification until they have been met." *Id*. As the committee makes clear, neither the Rule nor its comments limit the number of times a court may reconsider the definition of a class. The initial certification should be no different. The Tenth Circuit agrees with this proposition:

> We also note the district court's present certification decision is a preliminary one. After the parties conduct classwide discovery, the district court may find that the class, in fact, does not meet the requirements of Rule 23(a) or that more of Named Plaintiffs' requested remedies or none at all meet Rule 23(b)(2)'s requirements. If the court so finds, it possesses the discretion under Rule 23(c)(1)(C) to amend its certification order to reflect

its findings or decertify the class altogether prior to final judgment. *DG v. Devaughn*, 594 F.3d 1188, 1201 (10th Cir. 2010). Accordingly, the court finds it may consider plaintiff's motion for reconsideration.

## III. New Class Definition

Plaintiff's new Contract Class is defined as:

All individuals and entities who reside in the United States who (1) paid a "fuel fee or surcharge" to Deffenbaugh Industries, Inc. at any time from May 1, 2007 through January 31, 2011 and (2) entered into a written contract with Deffenbaugh Industries, Inc. that was in effect at any time from May 1, 2007 through January 31, 2011, which contains the following provision:

> Service or Equipment Changes / Rate Adjustments / Fiber Purchases…Customer agrees that DDS may from time to time increase the price or rates to adjust for (1) increases in DDS's fuel, disposal, or transportation cost, (2) increases in the Consumer Price Index, (3) increases in costs due to local, state or federal laws applicable to DDS's operations or the services rendered and (4) increases in taxes passed through to DDS (other than income or real property taxes). DDS may only increase prices or rate for reasons other than those set forth above with the consent of the Customer, which consent may be evidenced in writing or by the practices and actions of the parties.

and

> The rights and obligations of the parties hereunder shall be construed, enforced and governed by Kansas law, without regard to principles of conflicts of law.

(Doc. 75 at 4.) Plaintiff's new Contract Class narrows the putative class in two ways. First, only class members who paid a "fuel fee or surcharge" are included; the original definition included class members who paid any "environmental/fuel charges," "fuel surcharges," and/or "administrative fees." Second, only class members who entered into written contracts with Deffenbaugh between May 1, 2007 and January 31, 2011 are included; whereas the original

definition included contracts entered into as of the date of class notice. The same class exclusions apply.[4]

For the same reasons outlined in its previous order, the court finds that plaintiff's new Contract Class satisfies Rule 23's other class-certification requirements. Thus, the remaining question is whether the new Contract Class satisfies Rule 23(b)(3). Plaintiff argues this new definition addresses many of the court's concerns regarding predominance (Doc. 70). Deffenbaugh argues that this new definition still requires individualized inquiries, which predominate over the common issues of the class. After another careful review of the entire record, the court finds that plaintiff's new Contract Class satisfies Rule 23(b)(3).

### 1. Legal Standard for Finding Predominance Under Rule 23(b)(3)

It is the district court's "'duty to take a close look at whether common questions predominate over individual ones.'" *Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*, 725 F.3d 1213, 1219 (10th Cir. 2013) (quoting *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (quotation omitted)). The predominance factor is "'far more demanding'" than the commonality requirement of Rule 23(a). *Id.* at 1220 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623–24 (1997)). Predominance is satisfied "if there is a common nucleus of operative facts relevant to the dispute and those common questions represent a significant aspect of the case which can be resolved for all members of the class in a single adjudication." *Eatinger v. BP Am. Prod. Co.*, 271 F.R.D. 253, 261 (D. Kan. 2010) (citations omitted). "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Anchem Prods., Inc.*, 521 U.S. at 623.

---

[4] Those exclusions are:
- "any individual or entity whose contract with Deffenbaugh contains written notations which (1) expressly limit or set the amount of any of the disputed fees or (2) include any of the disputed fees in the monthly service rate"
- "any individual or entity currently in bankruptcy, any individual or entity whose obligations have been discharged in bankruptcy, and any judicial officer who has presided over this case."

Further, "[t]he nature of the evidence that will suffice to resolve a question determines whether the question is common or individual." *In re Urethane Antitrust Litig.*, 251 F.R.D. 629, 633–34 (D. Kan. 2008) (quoting *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005)). If the putative class members must present evidence that will vary from member to member in order to establish a prima facie case, then it is an individual question. *Garcia v. Tyson Foods, Inc.*, 255 F.R.D. 678, 690 (D. Kan. 2009) (citing *Blades*, 400 F.3d at 566; *Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311 (3d Cir. 2008)). But if the same evidence will establish a prima facie case for all class members, then the question is a common one. *See id.*

A class definition must be "precise, objective, and presently ascertainable." *Sibley v. Sprint Nextel Corp.*, 254 F.R.D. 662, 670 (D. Kan. 2008). And the class definition is of great import because it "identifies the persons (1) entitled to relief, (2) bound by a final judgment and (3) entitled under Rule 23(c)(2) to the best notice practicable in a Rule 23(b)(3) action." *In re Motor Fuel Temperature Sales Practices Litig.*, 279 F.R.D. 598, 604 (D. Kan. 2012) (citing Manual for Complex Litigation § 21.222 (4th ed. 2005)).

**2. Predominance in the Present Case**

In its previous order, the court found that plaintiff's Contract Class satisfied the majority of Rule 23's requirements. But the court also found that plaintiff's Contract Class failed the predominance factor.[5] The court found that a class definition containing the "administrative fee" could not be certified because the court would need to determine "whether each individual class member consented to the [administrative] fee." Applying that same logic to the "environmental/fuel" charge, the court stated:

> It is unclear based on the information before the court exactly what the relationship is between the "environmental" and "fuel" portions of the fee(s). If the court cannot

---

[5] Because the class failed the predominance factor, it followed that the class also failed the superiority factor.

determine whether the "fuel fee" is separate from the "environmental" fee at a certain point in time, then it would be difficult for potential class members to do so.

The court therefore concluded this weighed against a finding of predominance.

In order to assess predominance, courts often must assess the merits of a particular claim or defense. *See Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011)); *see also Coopers*, 437 U.S. 463, 469 at n.12 (1978) ("Evaluation of many of the questions entering into determination of class action questions is intimately involved with the merits of the claims. The typicality of the representative's claims or defenses, the adequacy of the representative, and the presence of common questions of law or fact are obvious examples. The more complex determinations required in Rule 23(b)(3) class actions entail even greater entanglement with the merits . . . .") (citation omitted)). The court therefore may need to make findings related to the merits of plaintiff's claims or Deffenbaugh's defenses. Any findings in the following analysis by the court are therefore inherently tentative. *See Coopers*, 437 U.S. 463, 469 (citing Fed. R. Civ. P. 23(c)(1)(C)).

Upon a new review of the record, the court finds that plaintiff's newly proposed class satisfies Rule 23(b)'s predominance factor. This is primarily because there is sufficient evidence in the record that explains the relationship between "environmental" and "fuel" portions of the fee. The court determines that Deffenbaugh's "environmental/fuel" surcharge, which appears on various contracts and invoices, is actually two separate surcharges: an environmental surcharge and a fuel surcharge. The court's survey of other Deffenbaugh customers' contracts in the record supports this finding. (*See* Docs. 59-4 and 59-5.)

### A. The Court's Survey of the Contracts in Evidence

Since approximately 2003, Deffenbaugh utilized a form, pre-printed contract, typically consisting of two pages: (1) a front-side, which contains blank spaces to enter the customer's name,


address, type of service, and other information, and (2) a backside, which contains a standard, uniform "Terms and Conditions" section ("the T&Cs").[6]

At some point in 2011, Deffenbaugh began using a contract with a different backside. Thus, the record contains two form contracts: (1) the 2005–2011 Form ("2005 Form"), and (2) the 2011–Present Form ("2011 Form").[7] The main difference between the forms is that the T&Cs on the 2011 Form are substantively different—specifically, the exact language of the provision at issue here. The new Contract Class therefore excludes the 2011 Form contracts altogether. The T&Cs on all 2005 Form contracts appear identical in all relevant ways—differing only in ways that have no bearing on Deffenbaugh's liability. Some contracts contain handwritten modifications to the T&Cs, such as altering the default length of the contract term or striking the liquidated damages provision. None of the provided contracts, however, alter the provision at issue in this case.

The front-side of each contract varies from contract to contract. This is why Deffenbaugh argues that it is not using a form contract and that these variations necessitate individualized inquiries, which weighs against a finding of predominance. The front side of each contract is a standard form, at its base. But Deffenbaugh's salespeople may fill in the blanks or space with handwritten or typed notations, as will be described below. The relevant notations in this case are typically found in the areas outlined with a blue dotted-line box:



---
[6] Some contracts contain an "Addendum."
[7] The names indicate when a contract was used—or supposed to be used, because that was not necessarily the case. In plaintiff's reply, 2011 is the year plaintiff claims the court can discern a difference between the "environmental/fuel" and the "fuel fee." (*See* Doc. 94.)

In those dotted areas, the contracts contain the following handwritten or typed terms, which are relevant to this case:

- "fuel"
- "Plus Fuel"
- "environmental/fuel" or "fuel/environmental"
- "environmental fuel charge"
- "Plus F/E"
- "environmental + fuel"
- "fuel/admin" or "admin/fuel"
- "fuel & admin"

The court makes the following observations regarding the contracts, particularly those terms:

1. Although Deffenbaugh continues to deny that there is a form contract here, the record indicates that Deffenbaugh has executed contracts with the 2005 Form's T&Cs from 2004 through 2012, possibly even longer. (*See* Doc. 59-4 at 21–26, 29–34, 38–41, 43–44, 46–47, 48–51, 53–56, 59–66, 70–74, 76–77; Doc. 59-5 at 2–3, 5–6, 11–12, 15–16, 18–19, 21–22, 25–26, 40–41, 44–45.)

2. Many contracts contain handwritten or typed terms that are immaterial to this case, but which indicate that the customer and Deffenbaugh likely negotiated—or at the very least, discussed—these terms. Such notes include "setup consolidated billing" (Doc. 59-5 at 53), "remove 2yd on wheels & deliver 3yd R x 4 @ 200 (M, W, F, S)" (Doc. 59-5 at 40), or "keep original contract effective dates the same" (Doc. 59-5 at 31).

3. Some contracts contain handwritten modifications to various provisions in the T&Cs, such as changing the length of the contract (*See* Doc. 59-4 at 22, 24), eliminating liquidated damages (Doc. 59-4 at 39), or striking the clause waiving a customer's right to a jury trial (Doc. 59-4 at 47). However, *no* contract in the record contains modifications to the provision at issue in this case.

4. Many contracts either permit or prohibit an "administrative fee" altogether. (*See* Docs. 59-4 and 59-5.) Even though that fee is no longer at issue in this case, that fee often accompanies other handwritten or typed terms, which provides interpretational context.

5. Many contracts contain the handwritten terms "Plus Fuel" or "No Fuel," but many of those same contracts never mention any "environmental" charge (or component of a charge). (*Id.*)

6. Those contracts that do incorporate an environmental charge do so in varying ways. A 2009 contract includes an "Addendum," which essentially modified the contract provision at issue in this case to include "environmental compliance fees." (Doc 59-4 at 68.) A handwritten notation of only "environmental" and its corresponding amount of "varies" is written on a 2010 contract—in the same spot where many contracts contain "Plus Fuel" or "Plus Fuel/Admin." (Doc. 59-4 at 76.)

7. When a contract references two or more fees, the fees are almost always written in the following syntax: "Fee One / Fee Two." This indicates Deffenbaugh's salespersons are using shorthand to reference two or more distinct and separate charges. Shorthand is further supported by a contract with a handwritten term of "+ F/E," which assumedly represents "plus fuel/environmental." (Doc. 59-5 at 17.)

8. This syntax is also used when referencing the "administrative fee," such as "fuel/admin." (Doc. 59-5 at 25.) This is important because the parties agree that the "administrative fee" is an altogether separate fee from the "fuel surcharge" or

-11-

the "environmental/fuel" surcharge.  As such, the "fuel/admin" term means that the customer is subject to a "fuel [surcharge or fee]" and an "administrative fee." This is a basis for the court determining that the "environmental/fuel" indicates two separate fees—an "environmental [surcharge or fee]" and a "fuel [surcharge or fee]."

9. Some contracts contain a handwritten term of "environmental/fuel" (or "fuel/environmental"), which is usually followed by a corresponding amount of "fluctuates" or "varies."[8]  (Doc. 59-5 at 1, 8, 9, 15.)  While some 2007 to 2009 contracts contain an "environmental/fuel" term (Doc. 59-5 at 17–18), most contracts containing this handwritten term were entered into after 2011.

10. Some contracts contain an "Addendum," which explicitly prohibits Deffenbaugh from charging an "environmental/fuel charge" until the price of diesel reaches a certain point.  (Doc. 59-5 at 46–47, 50–52.)

The survey revealed facts and inferences that point to the same conclusion: the "administrative," "environmental," and "fuel" charges are separate, distinct charges, regardless of how the charges are notated.  Additionally, Deffenbaugh's own spreadsheet, which surveys its customer contracts in a similar manner, never lists (or keeps track of) any "environmental" charge to its customers.  But it does track—*separately*—the fuel and administrative charges.  (Doc. 59-5 at 65–75.) For these reasons, if the court finds that plaintiff's new Contract Class satisfies Rule 23(b)'s predominance and superiority factors, the court can expand plaintiff's newly-proposed class to include

---

[8] Although the "fuel [surcharge or fee]" and the "environmental/fuel [surcharge or fee]" are typically followed by the term "fluctuates" or "varies," the change in the amount is uniform for every contract and customers pay the same fee amount. Because the terms "fluctuate" and "varies" simply indicate that the value of that charge or fee may change for all customers, the court is not faced with conducting individual inquiries.

any individual who paid an "environmental/fuel surcharge" because that term necessarily includes a "fuel surcharge."

### B. Deffenbaugh's Defenses of Consent and the Voluntary Payment Doctrine

Deffenbaugh argues class certification is improper because its defenses of consent and the voluntary payment doctrine necessitate individual inquiries that predominate over the class's common issues. In its previous order, the court found that, because the first sentence of the disputed provision only mentions a fuel charge, the "environmental/fuel" and "administrative" fees fall into the provision's second sentence, which would require the court to conduct individual inquiries as to whether each class member consented to those two fees (or component of the fees). (Doc. 70 at 16–17.) Now, however, plaintiff has withdrawn the claim involving the "environmental" fee (or portion of the fee), which means that the second sentence—the consent provision—is arguably no longer triggered. To the extent the defense applies at all, the court finds that Deffenbaugh's defense of consent does not bar class certification. The court will therefore evaluate Deffenbaugh's other defense, the voluntary payment doctrine.

Deffenbaugh also argues that the voluntary payment doctrine, as recognized by Kansas, bars plaintiff's claim. The doctrine must be examined because it may necessitate individual inquiries, which would weigh against a finding of predominance. The court is persuaded by the discussion of the voluntary payment doctrine vis-à-vis class action certification in *Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 45 (E.D.N.Y. 2008). The court finds this analysis particularly applicable:

> It is not the law that any time a voluntary payment doctrine issue is raised that certification must be denied. Such an absolute rule would bar almost all class actions involving alleged nondisclosures (even in standard form contracts) because there is always the possibility that a particular plaintiff, despite a nondisclosure by the defendant, somehow stumbled upon the nondisclosed fact at issue on his or her own and continued to make payments.

*Id*. at 45.  For these reasons, the court finds the voluntary payment doctrine does not bar certification of the class.  Before, it gave the court pause in conjunction with the other predominance considerations.  Now that those predominance concerns have been alleviated, however, this defense alone does not defeat predomination.

Ultimately, neither the defenses of consent nor the voluntary payment doctrine prevent class certification because, as the First Circuit put it:

> [W]here common issues otherwise predominated, courts have usually certified Rule 23(b)(3) classes even though individual issues were present in one or more affirmative defenses.  After all, Rule 23(b)(3) requires merely that common issues predominate, not that all issues be common to the class.  If, moreover, evidence later shows that an affirmative defense is likely to bar claims against at least some class members, then a court has available adequate procedural mechanisms.  For example, it can place class members with potentially barred claims in a separate subclass, or exclude them from the class altogether.

*Smilow v. SW. Bell Mobile Sys., Inc.*, 323 F.3d 32, 39–40 (1st Cir. 2003) (citations omitted).  This is consistent with the Tenth Circuit's statement that the court possesses the discretion under Rule 23(C)(1)(c) to "amend its certification order to reflect its findings or decertify the class altogether prior to final judgment."  *Devaughn*, 594 F.3d at 1201.

For the foregoing reasons, the court finds that the new Contract Class satisfies Rule 23(b)'s predominance factor.  The court will now determine if the new Contract Class satisfies the superiority factor.

### 3. Rule 23(b)(3)'s Superiority Factor

Rule 23(b)(3) requires that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b).  The rule provides four factors to be considered in making this determination:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

-14-

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

There is no evidence in the record that would weigh against certifying plaintiff's class under factors (A) and (B); there is no evidence that class members would prefer to individually control the prosecution of this claim and the court is unaware of any other litigation concerning this controversy.

As for factor (C), plaintiff argues that the potentially low damage award and high costs of litigation may deter individual class members from bringing individual claims and that the court would likely conserve its judicial resources by handling the claims as a class action in a single forum. The court agrees. Class members would be unlikely to bring their claims individually given that the cost of legal representation alone outweighs the cost of disputing a $15 per month charge. Additionally, it is desirable to concentrate the litigation in Kansas because Deffenbaugh is located in Kansas and it likely possesses the necessary records about every class member.

Finally, with respect to factor (D), Deffenbaugh argues that the class action would be difficult to manage because it necessitates individual inquiries. As explained throughout this opinion, the court does not see any individual inquiries that overwhelm the class' common issues and thus does not view this case as unmanageable. For now, a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

### 4. Plaintiff Adequately Represents the Class

Once again, Deffenbaugh argues that plaintiff cannot adequately represent the newly-proposed class because he has paid an "environmental/fuel surcharge"—not a "fuel surcharge." In other words, because plaintiff's contract states "Plus Fuel" but plaintiff was invoiced for an

"Environmental/Fuel surcharge" and paid it, plaintiff is not a member of the new Contract Class. The court remains unpersuaded. Because the court finds that the "environmental/fuel surcharge" is actually two separate charges (an environmental surcharge and a fuel surcharge), plaintiff Whitton has necessarily paid a "fuel surcharge."[9] The slash separating "environmental" from "fuel" is merely shorthand for the incorporation of both charges. Deffenbaugh's argument fails for this reason alone.[10]

### 5. Expanding the New Contract Class

Given the court's determination that the "environmental/fuel" surcharge is actually shorthand for two separate and distinct charges, the court will expand plaintiff's new Contract Class to include individuals or entities who paid an "environmental/fuel" charge to Deffenbaugh. This does not implicate the defense of consent because, as discussed earlier, the inclusion of that term is merely evidence that such an individual or entity has, in fact, paid a "fuel surcharge." The defense of consent only applies to terms that fall into the disputed provision's second sentence, such as the "environmental" or "administrative" fees. Plaintiff's claim involves only the fuel surcharge and its relation to Deffenbaugh's actual fuel costs.

The survey of other Deffenbaugh customers' contracts also allows the court to also expand the time frame plaintiff proposed. The court will redefine the class to include contracts entered into up until the date of class notice. The reason for this is that while Deffenbaugh allegedly switched to the 2011 Form contract *in 2011*, the record shows multiple 2005 Form contracts that were executed after 2011. Though the record does indicate a trend away from the 2005 Form contract, it is possible a 2005

---

[9] It also means he paid an "environmental" surcharge.

[10] Deffenbaugh previously argued this same point to the court, but the court found that plaintiff was a member of his proposed class. (Doc. 70 at 8 ("Plaintiff has put forth evidence that a "plus fuel" notation indicates only that the standard fuel surcharge applies. Because this notation on plaintiff's contract does not expressly limit or set the amount of the fees, or include the fees in the monthly service rate, plaintiff is not excluded from the Contract Class.")). The court reaffirms this point and adds an additional rationale.

Form contract could have been executed yesterday and it would be unfair to exclude such a class member. Accordingly, the court certifies the following class under Fed. R. Civ. P. 23(b)(3):

> All individuals and entities who reside in the United States who (1) paid an "environmental/fuel [surcharge or fee]" or a "fuel [surcharge or fee]" to Deffenbaugh Industries, Inc. at any time from May 1, 2007 through the present date, and (2) entered into a written contract with Deffenbaugh Industries, Inc. that was in effect at any time from May 1, 2007 through the [**insert date class notice is mailed**], which contains the following provision:
>
>> Service or Equipment Changes / Rate Adjustments / Fiber Purchases…Customer agrees that DDS may from time to time increase the price or rates to adjust for (1) increases in DDS's fuel, disposal, or transportation costs, (2) increases in the Consumer Price Index, (3) increases in costs due to local, state or federal laws applicable to DDS's operations or the services rendered and (4) increases in taxes passed through to DDS (other than income or real property taxes). DDS may only increase prices or rates for reasons other than those set forth above with the consent of the Customer, which consent may be evidenced in writing or by the practices and actions of the parties.
>
> Excluded from this proposed class is any individual or entity whose contract with Deffenbaugh contains handwritten or typed notations which expressly (1) limits or sets the amount of the fuel surcharge or fee, or (2) includes the disputed fuel fee in the monthly service rate. Also excluded from the class are any individuals or entity currently in bankruptcy, any individual or entity whose obligations have been discharged in bankruptcy, and any judicial officer who has presided over this case.

**IV. Appointing Class Counsel**

Rule 23(g) requires that "a court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g). When appointing counsel, the court must consider counsel's (1) work in identifying or investigating potential claims, (2) experience in handling class actions or other complex litigation, (3) knowledge of the applicable law, and (4) resources. Fed. R. Civ. P. 23(g)(1)(A). Plaintiff requests that its present counsel, the law firms of McCallum, Methvin & Terrell, PC and Wagstaff & Cartmell LLP be appointed as class counsel.

The court is satisfied that both firms meet the criteria of Rule 23(g). Both firms have (1) previously litigated multiple class actions, (2) diligently and continuously pursued this litigation for

-17-

more than a year, including conducting extensive written and electronic discovery and taking or defending more than seven depositions, and (3) have signed all the briefs throughout this case. The court is unaware of any conflicts of interests that would render them inadequate to represent the putative class in this case. Accordingly, the court appoints McCallum, Methvin & Terrell, PC and Wagstaff & Cartmell LLP as counsel for this class.

**V. Conclusion**

For the reasons set forth above, the court finds that its slightly modified version of plaintiff's new Contract Class satisfies Rule 23(a) and (b)(3).

**IT IS ORDERED** that plaintiff's Motion to Alter, Amend, Vacate or Reconsider the Court's Order Denying Class Certification (Doc. 72) is granted.

**IT IS FURTHER ORDERED** that McCallum, Methvin & Terrell, PC and Wagstaff & Cartmell LLP are appointed as counsel for this class.

**IT IS FURTHER ORDERED** that, on or before December 5, 2014, defendant is directed to provide plaintiff's counsel with the names, addresses, and if possible, telephone numbers for all customers falling within the defined class.

**IT IS FURTHER ORDERED** that, on or before December 12, 2014, plaintiff shall prepare and provide to the court a proposed order regarding notice that complies with the requirements of Rule 23(c) of the Federal Rules of Civil Procedure.

Dated this 28th day of October, 2014, at Kansas City, Kansas.

<div style="text-align:right">

s/ Carlos Murguia
**CARLOS MURGUIA**
**United States District Judge**

</div>