IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| LARRY WHITTON, on behalf of himself and all others similarly situated, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Case No. 2:12-cv-02247-CM-KGG |
| DEFFENBAUGH INDUSTRIES, INC. and DEFFENBAUGH DISPOSAL, INC. ) ) ) ) | |
| Defendants. ) ) | |
| GARY, LLC, on behalf of itself and all others similarly situated, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Case No. 2:13-cv-2634-CM-JPO |
| DEFFENBAUGH INDUSTRIES, INC. and DEFFENBAUGH DISPOSAL, INC. ) ) ) ) | |
| Defendants. ) ) | |

**MEMORANDUM AND ORDER**

Before the court are (a) Plaintiffs' Unopposed Motion for: (1) Conditional Certification of a Settlement Class; (2) Preliminary Approval of Class Settlement; and (3) Certain Ancillary Procedural Matters (Doc. 124) ("Motion for Preliminary Approval of Settlement"); (b) the parties' Joint Supplemental Briefing in Further Support of Motion for the Conditional Certification of a Settlement Class and Preliminary Approval of Class Settlement Including Revised Class Definition and Notices (Doc. 135) ("Joint Supplemental Briefing"); and (c) the parties' Joint Request for Hearing or Scheduling Conference (Doc. 136) ("Motion for Hearing"). As set forth below, including the

modifications noted by the court, the court grants the Motion for Preliminary Approval of Settlement as amended by the parties' Joint Supplemental Briefing, and it denies the parties' Motion for Hearing.

## I. BACKGROUND

### A. *Whitton, et al. v. Deffenbaugh Industries, Inc., et al.*

On May 1, 2012, plaintiff Larry Whitton, on behalf of himself and all others similarly situated, filed suit against Deffenbaugh Industries, Inc. and Deffenbaugh Disposal Inc. (collectively "Deffenbaugh"). (*See* Doc. 1 in Case No. 12-2247 ("*Whitton*").) The complaint brings claims for breach of contract, unjust enrichment, and violations of the Kansas Consumer Protection Act based on allegations that defendants had assessed and charged fuel charges, environmental fees, and administrative fees in amounts and for reasons not permitted under the terms of their written service agreements. (*See generally id.*)

On September 30, 2013, plaintiff brought a motion to certify the class, which the court denied on June 11, 2014. (*See* Docs. 48, 70.) On June 25, 2014, plaintiff filed a motion asking for the court to reconsider its order on class certification. (*See* Doc. 72.) On October 28, 2014, the court granted plaintiff's motion for reconsideration, and certified the following class, modified in part by the court, under Fed. R. Civ. P. 23(b)(3):

> All individuals and entities who reside in the United States who (1) paid an "environmental/fuel [surcharge or fee]" or a "fuel [surcharge or fee]" to Deffenbaugh Industries, Inc. at any time from May 1, 2007 through the present date, and (2) entered into a written contract with Deffenbaugh Industries, Inc. that was in effect at any time from May 1, 2007 through the [**insert date class notice is mailed**], which contains the following provision:
>
>> Service or Equipment Changes / Rate Adjustments / Fiber Purchases…Customer agrees that DDS may from time to time increase the price or rates to adjust for (1) increases in DDS's fuel, disposal, or transportation costs, (2) increases in the Consumer Price Index, (3) increases in costs due to local, state or federal laws applicable to DDS's operations or the services rendered and (4) increases in taxes passed through to DDS (other than income or real property taxes). DDS may

> only increase prices or rates for reasons other than those set forth above with the consent of the Customer, which consent may be evidenced in writing or by the practices and actions of the parties.
>
> Excluded from this proposed class is any individual or entity whose contract with Deffenbaugh contains handwritten or typed notations which expressly (1) limits or sets the amount of the fuel surcharge or fee, or (2) includes the disputed fuel fee in the monthly service rate. Also excluded from the class are any individuals or entity currently in bankruptcy, any individual or entity whose obligations have been discharged in bankruptcy, and any judicial officer who has presided over this case.

(*See* Doc. 97.)[1] On November 11, 2014, defendants filed a motion for reconsideration of the court's order on plaintiff's motion for reconsideration. (*See* Doc. 99.) On February 23, 2015, the court denied defendants' motion for reconsideration. (*See* Doc. 109.)

On March 10, 2015, defendants filed a motion to appeal pursuant to Fed. R. Civ. P. 23(f) with the United States Court of Appeals for the Tenth Circuit. (*See* Doc. 110.) The Tenth Circuit granted defendants' request for appellate review. (*See* Doc. 113.) On November 4, 2015, before ruling on the merits of the appeal and upon request by the parties due to settlement, the Tenth Circuit abated the appeal and remanded for the court's consideration of the parties' settlement. (*See* Doc. 119.)

### B. *Gary, LLC, et al. v. Deffenbaugh Industries, Inc., et al.*

Meanwhile, on December 10, 2013, plaintiff Gary, LLC ("Gary"), on behalf of itself and all others similarly situated, filed suit against Deffenbaugh.[2] (*See* Doc. 1 in Case No. 13-2634 ("*Gary*").) The complaint claims defendants breached their contract and were unjustly enriched because they increased the base rate for waste collection services for reasons and in amounts greater than permitted under the written service agreements. (*See generally id.*) On April 16, 2015, the parties filed a joint

---

[1] The day before entering its order granting plaintiff's motion for reconsideration, the court denied defendants' motion for summary judgment, which they filed on February 7, 2014. (*See* Docs. 66, 96.)

[2] Later, the parties filed a joint motion to dismiss Deffenbaugh Disposal, Inc., leaving only Deffenbaugh Industries, Inc. in the case. (Doc. 23 in *Gary*.) The court granted the joint motion to dismiss. (Doc. 27.) For simplicity, the court will continue to refer to the defendant as "Deffenbaugh."

motion to stay the case pending the resolution of the appeal in *Whitton*, which the court granted. (Docs. 45, 46.)

### C. The Parties' Mediation, Settlement, and Motion to Consolidate

On November 4, 2015, the Tenth Circuit Court of Appeals entered an order in *Whitton* stating that the parties had settled the case, abating the appeal, and remanding the case to have this court consider a settlement reached by the parties. (Doc. 119 in *Whitton*.) On November 10, 2015, the parties in *Whitton* and *Gary* filed a joint motion requesting that the court consolidate the cases for purposes of reviewing the parties' settlement, as the parties in both cases had reached a global settlement. (*See* Doc. 120 in *Whitton*; Doc. 49 in *Gary*.) The court granted the motion to consolidate to consider the settlement.[3] (*See* Doc. 127 in *Whitton*.)

### D. Settlement Agreement

Under the proposed settlement, defendants have agreed to establish a settlement fund in the amount of $7,695,000.00. Those funds, after payments to class counsel and class representatives in the amounts approved by the court, will be distributed to the settlement class in the following manner:

    i. <u>Per Capita Distribution:</u>  Fifteen percent (15%) shall be allocated such that every Class Member who does not opt out shall receive its per capita distribution of approximately twenty-one dollars ($21.00) in consideration of the settlement and release of all claims; and

    ii. <u>Pro Rata Distribution:</u>  After performing the Per Capita Distribution calculations for all Class Members, all remaining amounts in the Settlement Fund shall be distributed to those Class Members who also paid Fuel Charges as follows. The Settlement Administrator shall calculate, from data supplied by Deffenbaugh, (1) the total amount of Fuel Charges billed to all Commercial Customers between May 1, 2007 and June 30, 2015, and (2) the total amount of Fuel Charges billed to each individual Class Member between May 1, 2007 and June 30, 2015. Using this information, the Claims Administrator shall determine the pro-rata recovery of each Class Member who was billed Fuel Charges and award and distribute the same to each Class Member.

---

[3] All subsequent court document citations refer to *Whitton*.

(Doc. 125 at 5.)  The parties have agreed to disburse remaining funds to the class members through a second pro rata distribution from the settlement fund.  (*Id.*)  None of the settlement fund will revert to defendants.  (*Id.*)

The parties also have agreed that Deffenbaugh would make "certain prospective modifications and improvements to its pricing practices to address Plaintiffs' concerns that Deffenbaugh's pricing practices make it difficult for commercial customers to make informed contracting decisions or to exercise their contractual rights under their Service Agreements."  (*Id.*)  Deffenbaugh will therefore

> (i) publicly post a description of the various Fees on the Company website; (ii) post the table for the Fuel Charges (and link to the underlying U.S. Department of Transportation fuel cost index) so that actual or prospective customers can ascertain their expected Fuel Charges for any given national average price of diesel fuel; and (iii) provide advanced or contemporaneous written notice of a Rate Increase along with customer service contact information.

(*Id.*)

### E.  Proposed Settlement Class and Request for Supplemental Briefing

In their Motion for Preliminary Approval of Settlement, the named plaintiffs asked the court to certify a settlement class under Fed. R. Civ. P. 23(a) and 23(b)(3) defined as follows:

> All Commercial Customers in Kansas, Missouri, Iowa or Nebraska who were parties to a written Commercial Service Agreement with Deffenbaugh Industries, Inc. or its affiliates at any time between May 1, 2007 and June 30, 2015.

(Doc. 125 at 6.)  On May 17, 2016, the court requested supplemental briefing on a number of issues related to the pending motion to approve the settlement.  (*See* Doc. 132.)  In the parties' responsive Joint Supplemental Briefing, they requested that the court consider their proposed amended class definition instead of the class definition in the Motion for Preliminary Approval of Settlement.  (*See* Doc. 135.)  The parties' proposed revised settlement class definition follows:

> Settlement Class shall mean all Commercial Customers in Kansas, Missouri, Iowa or Nebraska who were parties to a written Service Agreement with Defendants or their

-5-

>affiliates at any time between May 1, 2007 and June 30, 2015 and who were assessed either: (a) a fuel surcharge; (b) an environmental fee (or fuel/environmental fee); (c) an administrative fee; or (d) a base rate increase not accompanied by a new contract or change in service.

(Doc. 135 at 2.)  Accordingly, the court construes the parties' supplemental briefing (Doc. 135) as a motion to revise the settlement class definition, and the court will consider the revised definition.  (*See* Doc. 135 at 9 ("Finally, to the extent the Court allows the Parties' proposed *nunc pro tunc* revision to the Settlement Class definition, any issues, questions or concerns about the sufficiency of the linkage between the proposed Settlement Class and the harms alleged in the *Whitton* and *Gary* actions would be resolved.").)

## II. ANALYSIS

### A. Motion for Preliminary Approval of Settlement

In their Motion for Preliminary Approval of Settlement, the parties ask the court to (1) conditionally certify the proposed settlement class; (2) grant preliminary approval of the proposed settlement agreement; (3) appoint plaintiffs' counsel as class counsel; (4) approve the proposed notice; and (5) direct that notice of the settlement be provided to the proposed settlement class per the proposed notice plan and set the final fairness hearing.  The court addresses these issues below.

#### 1. Rule 23 Class Certification for Purposes of Settlement

Plaintiffs seek certification of the following settlement class:

>[A]ll Commercial Customers in Kansas, Missouri, Iowa or Nebraska who were parties to a written Service Agreement with Defendants or their affiliates at any time between May 1, 2007 and June 30, 2015 and who were assessed either: (a) a fuel surcharge; (b) an environmental fee (or fuel/environmental fee); (c) an administrative fee; or (d) a base rate increase not accompanied by a new contract or change in service.

(Doc. 135 (amending proposed class definition in Motion for Preliminary Approval of Settlement).) The determination of class certification is committed to the broad discretion of the trial court. *See In re Motor Fuel Temperature Sales Practices Litig.*, 258 F.R.D. 671, 674 (D. Kan. 2009) (citing *Shook*

*v. El Paso Cnty.*, 386 F.3d 963, 967 (10th Cir. 2004). Plaintiffs have the burden to demonstrate "under a strict burden of proof" that the requirements of Rule 23 are satisfied. *See Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006).  To do so, plaintiffs must first satisfy the prerequisites of Fed. R. Civ. P. 23(a). *In re Motor Fuel Temperature Sales Practices Litig.*, 258 F.R.D. at 674.  Then, plaintiffs must demonstrate that the proposed class action fits within one of the categories described in Fed. R. Civ. P. 23(b). *Id.* at 675.

### a. The Proposed Revised Class Definition Meets the Requirements of Fed. R. Civ. P. 23(a)

To satisfy the prerequisites of Fed. R. Civ. P. 23(a), plaintiffs must show that (1) the class is so numerous that joinder of all members is impracticable; (2) questions or law or fact are common to the class; (3) the claims of the representative parties are typical of the claims of the class; and (4) the representative parties will fairly and adequately protect the class members' interests.  Fed. R. Civ. P. 23(a). The court looks to each requirement below.

#### i. The Class is so Numerous that Joinder of all Members is Impracticable

Rule 23(a)(1) requires plaintiffs to show that "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  To satisfy this requirement, plaintiffs must produce "some evidence or otherwise establish by reasonable estimate the number of class members who may be involved." *In re Motor Fuel Temperature Sales Practices Litig.*, 258 F.R.D. at 679–80 (citing *Rex v. Owen ex rel. State of Okla.*, 585 F.2d 432, 436 (10th Cir. 1978)).  Plaintiffs assert that the class will include approximately 35,000 members.  (*See* Doc. 135-1 at 4.)  A class of 35,000 members easily satisfies the numerosity requirement of Fed. R. Civ. P. 23(a)(1). *See* 4 Newberg, *Class Actions* § 3.05 ("In light of prevailing precedent, the difficulty inherent in joining as few as 40

class members should raise a presumption that joinder is impracticable, and the Plaintiff whose class is that large or larger should meet the test of Rule 23(a)(1) on that fact alone.").

### ii. Questions or Law or Fact are Common to the Class

Federal Rule of Civil Procedure 23(a)(2) requires that plaintiffs show that "questions of law or fact are common to the class." Fed. R. Civ. P. 23(a)(2). A single common question will satisfy Fed. R. Civ. P. 23(a)(2). *In re United Telecomms., Inc., Sec. Litig.*, Civ. A. No. 90-2251-O, 1992 WL 309884, at **1–2 (D. Kan. Sept. 15, 1992). Here, the commonality requirement is satisfied because plaintiffs and the class members each entered into a service agreement with a defendant for commercial waste or recycling services that contained common terms relating to price adjustment (such as fees and rate increases) over the life of the contracts. Plaintiffs contend that defendants assessed plaintiffs and class members certain rate increases and fees pursuant to a common fuel charge table, and that defendant imposed their fees and rate increases in an across-the-board manner not permitted under the service agreements. The interpretation of a form contract and whether defendants' conduct breached that contract satisfies the commonality requirement of Fed. R. Civ. P. 23(a)(2).

### iii. The Claims of the Representative Parties are Typical of the Claims of the Class

Federal Rule of Civil Procedure 23(a)(3) requires plaintiffs to show that "the claims of the representative parties are typical of the claims of the class." "This element requires that representative plaintiffs possess the same interests and suffer the same injuries as the proposed class members." *In re Motor Fuel Temperature Sales Practices Litig.*, 258 F.R.D. at 679. The claims of the representative plaintiffs do not need to be identical to those of the other class members; instead, the court looks to whether the claims are "significantly antagonistic" to the claims of the proposed class. *Id.*

Plaintiffs state that the named plaintiffs' claims are not antagonistic to the proposed class members. (Doc. 125 at 9.) Plaintiffs explain that plaintiff Whitton alleges that defendants, pursuant to

a common contract form and common "fuel charge table," charged him and other commercial customers in Kansas, Missouri, Iowa, and Nebraska a fuel charge that was not limited to increases in defendant's fuel costs and therefore violated the terms of the service agreement between the parties. (*Id.*) Likewise, plaintiff Gary claims that defendant passed through to it and to defendant's other commercial customers certain rate increases in an amount or in a manner not permitted under the terms of the service agreement between the parties. These breach of contract claims and the resulting injuries alleged to have been suffered by the named plaintiffs are like the claims asserted on behalf of the proposed class and the type of injuries alleged to have been suffered by the class members. Therefore, plaintiffs' claims satisfy the requirements of Fed. R. Civ. P. 23(a)(3).

### iv. The Representative Parties will Fairly and Adequately Protect the Class Members' Interests

Federal Rule of Civil Procedure 23(a)(4) requires that plaintiffs show that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "To meet this requirement, the representatives must be members of the class they seek to represent and show that (1) their interests do not conflict with those of the class members; and (2) they will be able to prosecute the action vigorously through qualified counsel." *In re Motor Fuel Temperature Sales Practices Litig.*, 258 F.R.D. at 679 (citing *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977), *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187–88 (10th Cir. 2002)).

Here, plaintiffs have represented that the class representatives have no interests antagonistic to the rest of the class. Furthermore, plaintiffs, through qualified counsel, have prosecuted the action vigorously. Based on this, the court finds that the representative parties will fairly and adequately protect the class members' interests, and the requirements of Fed. R. Civ. P. 23(a)(4) are met.

### b. The Proposed Revised Class Definition Meets the Requirements of Fed. R. Civ. P. 23(b)(3)

In addition to meeting the requirements of Fed. R. Civ. P. 23(a), plaintiffs must also demonstrate that the proposed class definition falls within one of the categories of Fed. R. Civ. P. 23(b). Plaintiffs here seek to proceed under Fed. R. Civ. P. (b)(3), which requires that "questions of law or fact common to the members of the class predominate" and that a class action "is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). In determining predominance and superiority under Rule 23(b)(3), the court considers the following:

A. the class members' interests in individually controlling the prosecution or defense of separate actions;
B. the extent and nature of any litigation concerning the controversy already begun by or against class members;
C. the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
D. the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). In deciding whether to certify a settlement class, however, the court is not required to inquire whether the case, if tried, would present difficult management problems under Fed. R. Civ. P. 23(b)(3)(D), because there will be no trial. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997).

Plaintiffs state that their claims arise from defendants' actions taken pursuant to the terms of its service agreements, and in particular, defendants' alleged practices of imposing fees and rate increases that are not tied to the contractually enumerated categories that are attributable to servicing each such customer. The focus of such claims is on the terms of defendants' contracts and actions. Plaintiffs allege that these common pricing practices constitute the contractual breach common to plaintiffs and class members. Accordingly, the claims of the settlement class arise from common facts and involve common questions of law that predominate over any differences.

The parties have agreed to provide (1) guaranteed minimum relief in the form of a per-capita payment for the settlement and release of any and all potential pricing claims under the service agreements and (2) additional, proportionate relief in the form of pro-rata payments to the class members who also paid fuel charges. This monetary relief is available without requiring the class members to establish particular contract terms, contract modifications, contract renewals, contract negotiations, or evidence of any class members' purported consent to any fees or rate increases. This monetary relief is also provided automatically without any requirement that class members submit a claim form to receive compensation. Plaintiffs represent that the proposed settlement class is ascertainable from defendants' business records. In the context of this settlement, given the likely costs and expenses associated with individual claims when weighed against the potential recoveries and the potential waste of judicial resources, the superiority requirement of Rule 23(b)(3) is satisfied.

The proposed settlement class meets the certification requirements of Fed. R. Civ. P. 23(a) and (b). The court therefore modifies its previous order granting class certification (*see* Doc. 97) to encompass the revised class definition proposed by the parties. Accordingly, the court certifies the following class:

> [A]ll Commercial Customers in Kansas, Missouri, Iowa or Nebraska who were parties to a written Service Agreement with Defendants or their affiliates at any time between May 1, 2007 and June 30, 2015 and who were assessed either: (a) a fuel surcharge; (b) an environmental fee (or fuel/environmental fee); (c) an administrative fee; or (d) a base rate increase not accompanied by a new contract or change in service.

The court designates named plaintiffs, Larry Whitton and Gary, LLC, as class representatives.

### 2. Preliminary Approval of the Settlement Agreement

Federal Rule of Civil Procedure 23(e) authorizes a court to approve a class action settlement after notice, a hearing, and "on finding that [the settlement] is fair, reasonable, and adequate." Fed. R.

Civ. P. 23(e)(2). Courts determine whether a proposed settlement is fair, reasonable, and adequate by considering:

1. whether the proposed settlement was fairly and honestly negotiated;
2. whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;
3. whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and
4. the judgment of the parties that the settlement is fair and reasonable.

*Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002) (quoting *Gottlieb v. Wiles*, 11 F.3d 1004, 1014 (10th Cir. 1993), *abrogated on other grounds by Devlin v. Scardelletti*, 536 U.S. 1 (2002)); *Jackson v. Ash*, No. 13-2504-EFM-JPO, 2015 WL 751835, at *1–2 (D. Kan. Feb. 23, 2015).

### a. Whether the Proposed Settlement was Fairly and Honestly Negotiated

The settlement agreement before the court was the product of arm's length negotiations reached before Bernard Harwood, an experienced mediator and former trial judge and justice of the Alabama Supreme Court. The parties engaged in at least six substantive mediation sessions before several different mediators over the course of nearly three years. The final series of mediation sessions, as part of the Tenth Circuit's appellate mediation process, resulted in the settlement of *Whitton* and *Gary*. Nothing in the record suggests the proposed settlement was the product of collusion. This factor favors granting preliminary approval of the settlement.

### b. Whether Serious Questions of Law and Fact Exist, Placing the Ultimate Outcome of the Litigation in Doubt

Plaintiffs state that many challenges remained to a litigated resolution of the claims included in the settlement. For example, as to approximately 6,000 members of the settlement class, the court had determined that the terms of their service agreement rendered their claims for certain fees unsuitable for class treatment because the claims required an inquiry of whether the members had consented.

Similarly, defendants contend that the claims in *Gary* would be subject to the same individualized consent inquiry. Even as to the fuel charges and fees, defendants argue that this court recognized that some members of the proposed litigation class individually negotiated or modified their service agreements while others signed a different service agreement that Deffenbaugh began using in 2011 and which was not part of the *Whitton* class. Furthermore, the Tenth Circuit granted an interlocutory review of the class the court certified in *Whitton*. For these reasons, the court finds that this factor weighs in favor of granting preliminary approval of the settlement.

### c. Whether the Value of an Immediate Recovery Outweighs the Possibility of Future Relief

The settlement agreement provides for a $7,695,000 settlement fund available for distribution to the class, after the payment of any court-awarded attorneys' fees, expenses, and incentive awards. Before deduction of court-awarded fees, expenses, and incentive awards, plaintiffs state that the settlement is expected to return more than 35% of the total fuel charges from 2007 through 2014 falling within the scope of the court's *Whitton* class determination and a greater percentage of any alleged excess fuel charge recovery that could be available as potential breach of contract damages. The class members who paid fuel charges will receive approximately $21.00 plus their pro rata share of eighty-five percent of the remainder of the settlement fund.

The structure of the proposed settlement distinguishes between the claims based on the fuel charges certified by this court in *Whitton* and claims based on other alleged pricing practices for which this court had either denied certification or in the *Gary* litigation, which had not reached the certification stage. Even those members of the proposed settlement class that never paid any fuel charges will receive an automatic cash payment from the settlement fund. Those who were billed fuel charges will recover substantially more from their pro rata share in the remainder of the settlement fund. Under the proposed settlement, all such settlement class members who do not opt out will

-13-

receive compensation for claims that likely would be uneconomical to pursue individually.  Finally, as discussed above, defendants have agreed to make "certain prospective modifications and improvements to its pricing practices to address Plaintiffs' concerns that Deffenbaugh's pricing practices make it difficult for commercial customers to make informed contracting decisions or to exercise their contractual rights under their Service Agreements."  (Doc. 125 at 5.)  Given the uncertainty of the outcome of this litigation and the value of the settlement to the proposed class, this factor weighs in favor of granting preliminary approval of the settlement.

### d. The Judgment of the Parties that the Settlement is Fair and Reasonable

The parties state that the settlement is fair and reasonable to the class considering that it will provide each class member who does not opt out with a guaranteed minimum relief in the form of a per-capita payment for the settlement and release of any and all potential pricing claims (e.g., environmental fee claims) under the service agreements.  Furthermore, it will provide each class member who does not opt out additional proportionate relief in the form of pro-rata payments to the majority of class members who do not opt out without the requirement to submit a claim or to prove eligibility or liability.  Therefore, the settlement provides an assurance of payment to all class members without the need to establish any contract terms or damages.  Additionally, as part of the settlement, defendants voluntarily agreed to make certain prospective changes in its pricing practices designed to address plaintiffs' contentions that certain practices made it more difficult for commercial customers to make informed contracting decisions or to exercise their contractual rights.  Such changes, and the parties' belief that the settlement is fair and reasonable, weigh in favor of preliminarily approving the settlement.

For all of the above reasons, the court finds that the proposed settlement was fairly and honestly negotiated, that serious questions of law and fact exist that place the ultimate outcome of the

litigation in doubt, that the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation, and the parties' respective counsel believe the settlement to be fair and reasonable. For these reasons, the court preliminarily approves the settlement as fair, reasonable, and adequate, subject to further consideration at the final approval hearing as described below.

### 3.  Appointment of Class Counsel

Plaintiffs ask the court to appoint Robert G. Methvin, Jr. and James M. Terrell of McCallum, Methvin & Terrell, P.C. and Eric D. Barton of Wagstaff & Cartmell LLP. The court already appointed the law firms of McCallum, Methvin & Terrell, PC and Wagstaff & Cartmell LLP to serve in such positions as referenced in Doc. 97. For those reasons already on the record, the court grants plaintiffs' request and appoints Robert G. Methvin, Jr. and James M. Terrell of McCallum, Methvin & Terrell, P.C. and Eric D. Barton of Wagstaff & Cartmell LLP.

### 4.  Notice to Settlement Class

Plaintiffs ask the court to approve and direct notice to settlement class members in accordance with the terms of the settlement agreement. The settlement agreement provides that within fifteen days of the entry by the court of this order, the settlement administrator shall mail the class notice to the last known address of every potential class member by first class mail. The proposed notice states as follows:

> In the United States District Court for the District of Kansas
> *Larry Whitton and Gary, LLC v. Deffenbaugh Industries, Inc., et al.*
> **NOTICE OF PROPOSED CLASS ACTION SETTLEMENT**
> **YOUR LEGAL RIGHTS MIGHT BE AFFECTED BY THIS SETTLEMENT**
> **PLEASE READ CAREFULLY**
>
> If you entered into a written contract with Deffenbaugh Industries, Inc. or any of its affiliated companies (collectively "DII") for commercial waste and/or recycling services in the States of Kansas, Missouri, Iowa or Nebraska and were assessed either: (a) a fuel surcharge; (b) an environmental fee (or fuel/environmental fee); (c) an administrative

> fee; or (d) a base rate increase (collectively "Fees or Increases") not accompanied by a new contract or change in service, you may be entitled to participate in a Class Action Settlement and receive payment.  Plaintiffs Larry Whitton and Gary, LLC filed lawsuits against DII alleging that it had engaged in improper pricing or contracting practices, including but not limited to, the methods of establishing its base rate price increases, fuel charges, environmental fees, and administrative fees for its commercial customers.  A settlement of these lawsuits has been reached.  Under the proposed Settlement, you may be entitled to payment if you entered into a written contract with DII, paid any of the Fees or Increases and received services between May 1, 2007 and June 30, 2015.
>
> **Excluded from the class are individual residential customers and franchised customers (i.e. customers that are directly subject to a franchise agreement or other exclusive waste collection relationship that DII may have with a local municipality or government entity that governs CII's contractual pricing relationship with the customer).**
>
> If you are a member of the Settlement Class, you do not need to take any action to protect your right to participate in the Settlement or to receive payment if the Class Action Settlement is approved by the Court.  If you remain in the Settlement Class, you will release any claims you may have against DII.  If you wish to exclude yourself from the Settlement, you must provide notice by ____, 2016.  To object to the Settlement you must file a written objection by ___, 2016, and you may (but are not required to) appear through counsel if you wish to do so.  Under the proposed Settlement, Class Counsel will be seeking an award of attorneys' fees, reimbursement of litigation expenses and incentive awards to the Class Representatives.
>
> You can learn more about the lawsuits and the Settlement, including the procedures to exclude yourself from the Class Action Settlement or to object to it, at www.DIISettlement.com or by calling the settlement administrator at (866) 778-1146.

(Doc. 135-3 (emphasis in original).)  The parties have also submitted a "long form" proposed notice, which will provide additional details about the terms of the settlement.  The parties will make the long form notice available on the settlement website.

Because the proposed notice communicates class certification as well as proposed class settlement, it must comply with the requirements of Rule 23(c)(2) and (e).  Federal Rule of Civil Procedure 23(c)(2)(B) requires that the class certification notice must

> clearly and concisely state in plain, easily understood language:
>
> (i)     the nature of the action;
> (ii)    the definition of the class certified;

      (iii)    the class claims, issues, or defenses;
      (iv)    that a class member may enter an appearance through an attorney if the member so desires;
      (v)    that the court will exclude from the class any member who requests exclusion;
      (vi)    the time and manner for requesting exclusion; and
      (vii)    the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). Federal Rule of Civil Procedure 23(c)(2) imposes more stringent requirements than Fed. R. Civ. P. 23(e) with regard to class settlement notice. *See In re Motor Fuel Temperature Sales Practices Litig.*, 258 F.R.D. at 681–82.

     The court believes that in order to meet the requirements of Fed. R. Civ. P. 23(c)(2)(B), the parties must specifically and by name list all "affiliated companies" (as referenced in the proposed short notice) in the short notice. Subject to that modification, the court approves the proposed notice. At the final fairness hearing, the parties will be required to show that they have met the notice requirements under a strict burden of proof.

     Regarding the parties' proposed notice plan, within five days after entry of this order, the parties must contact the court for a final fairness hearing date at least 105 days after the date of this order. From that scheduled date, the parties may use the following guidelines to set the deadlines leading up to the hearing.

| | |
|---|---|
| Notice plan implemented and class notice mailed | Within 15 days after the date of this order. |
| Last day for opt-outs or objections | At least 75 days after date of this order and at least 30 days before final approval hearing. Note agreed date in class notices. |
| Deadline for plaintiffs to file motion for final settlement approval | After the last day for opt-outs and objections and at least 14 days before the final approval hearing. |

| | |
|---|---|
| Final approval hearing | Schedule with court.  At least 105 days after entry of this order.  Note agreed date and time in class notices. |

### B.  Motion for Hearing

The court does not believe a hearing is necessary regarding either the issues involved in conditional class certification or scheduling; therefore, the court denies as moot the parties' Motion for Hearing (Doc. 136).  For purposes of scheduling the final fairness hearing before distributing notice to the class members, counsel should contact chambers via email at ksd_murguia_chambers@ksd.uscourts.gov with proposed dates.

**IT IS THEREFORE ORDERED** that plaintiffs' unopposed Motion for Preliminary Approval of Settlement (Doc. 124) as modified by the parties' Joint Supplemental Briefing (Doc. 135) is granted with the court's modifications as to the short notice form.

**IT IS FURTHER ORDERED** that the parties shall contact chambers by email to schedule the final approval hearing at least 105 days from the date of this order.

**IT IS FURTHER ORDERED** that after the last day for class members to opt out and object, and at least 14 days before the final approval hearing, plaintiffs shall file a motion for final settlement approval with this court.

**IT IS FURTHER ORDERED** that the settlement administrator must mail notice of the settlement to the class members within 15 days of this order.

**IT IS FURTHER ORDERED** that the parties shall decide the deadline for class members to opt out or object.  That deadline must be at least 75 days after the date of this order and at least 30 days before the scheduled final approval hearing.  Plaintiffs must note the date in the notice mailed to the class members.

Dated this 26th day of August, 2016, at Kansas City, Kansas.

                                        s/ Carlos Murguia
                                        **CARLOS MURGUIA**
                                        **United States District Judge**